UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 21-CR-0363-CVE |
| | ) | |
| MICHAEL LAMONT PHILLIPS, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Now before the Court are the following motions: defendant's motions to suppress evidence (Dkt. ## 24, 25); defendant's Motion in Limine to Exclude Evidence Related to Phillips' Criminal Record and Alleged Dangerous Character (Dkt. # 26); defendant's Motion in Limine Regarding References to Alleged Gang Affiliation (Dkt. # 27); defendant's Motion in Limine to Limit Testimony that Drug Dealers Typically Possess Firearms (Dkt. # 28); defendant's motions to dismiss count two of the indictment (Dkt. # 29); and plaintiff's Notice of Intent to Admit Evidence of Other Crimes, Wrongs or Acts (Dkt. # 41).

### I

On April 18, 2021, Tulsa Police Department (TPD) Officers Michael Snyder and Will Mortensen were on patrol near Apache Street and Yale Avenue in Tulsa, Oklahoma after members of the community had complained about gang activity and shootings in the area. Snyder was driving westbound on East Apache Street when he saw several cars headed eastbound being operated in a reckless manner, and Snyder recognized the driver of one of the cars as Phillips. Phillips was not wearing a seatbelt, and Snyder had previously pulled Phillips over and given him a warning for

driving with a suspended license. Snyder testified that he had stopped Phillips at least three times while he was driving the same vehicle, and Snyder knew that Phillips did not possess a valid driver's license. Based on his observations and prior knowledge about Phillips, Snyder initiated a traffic stop of Phillip's vehicle for the offenses of driving without wearing a seatbelt, speeding, and driving with a suspended license. Phillips pulled his vehicle into the driveway of a business and Phillips' vehicle was partially blocking the driveway.

Snyder approached the vehicle from the driver's side and Mortensen approached from the passenger side, and the passenger side window was closed. Snyder spoke to Phillips about the reason for the traffic stop, and Snyder smelled alcohol coming from defendant and an odor of marijuana coming from the vehicle. Mortensen had to ask Phillips several times to roll down the passenger side window, and Phillips did partially roll down the passenger side window. Mortensen testified that he also smelled alcohol and marijuana coming from inside the vehicle. Snyder confirmed that Phillips' driver's license was suspended, and he also found that there were two outstanding warrants for Phillips' arrest. Snyder placed Phillips under arrest based on the traffic violation and outstanding warrants, and Mortensen initiated a search of Phillips' vehicle.

Mortensen and Snyder both testified that Mortensen was simultaneously conducting a probable cause search for marijuana and alcohol and an inventory search of the vehicle. Both Snyder and Mortensen testified that they had probable cause to search the vehicle based on the odor of alcohol and marijuana coming from the vehicle. They also believed that an inventory search was necessary, because Phillips' vehicle was blocking the driveway of a business and needed to be moved. The owner of the business asked police to remove the vehicle and a tow truck was called to the scene to move the vehicle. Mortensen found a bottle of vodka and a flask in the center

console, and he found a quantity of crack cocaine in a "natural void" between the center console and the driver's side seat. Police also recovered a small quantity of marijuana and $246 in United States currency from the vehicle. Defendant's Ex. 1, at 3. Snyder testified that defendant asked if he could call a female to come and remove the vehicle, but Snyder denied this request due to the presence of evidence of a crime in the vehicle. The vehicle was towed and impounded after the completion of the search.

On August 11, 2021, Snyder and Mortensen stopped at a QuikTrip store located at 1513 North Peoria Avenue in Tulsa, and Snyder entered the store while Mortensen remained in their patrol car. Snyder saw Phillips in the store and he observed that Phillips was with a female when he entered the store. Snyder knew that there was an outstanding warrant for Phillips' arrest, and Snyder arrested Phillips on the warrant. Snyder determined that Phillips arrived at the store in a vehicle, and Snyder contacted TPD Officer Andrew DeGeorge to come to the store and maintain surveillance over the vehicle. DeGeorge arrived at the store and reviewed video surveillance footage from the QuikTrip store, and the video showed Phillips arrive at the store in a blue Pontiac Grand Prix with a female passenger in the vehicle. Officers could not find the female passenger after Phillips was arrested, and the vehicle remained parked at a gas pump. Snyder testified that defendant pretended he did not see the vehicle as he drove away with defendant in custody. DeGeorge stayed behind to watch the vehicle and he later saw the female passenger enter the vehicle and drive away. DeGeorge used the vehicle's license plate to check for information about the vehicle's owner, and he learned that the registered owner of the vehicle was Lavonta Shonta Dennis. Defendant's Ex. 3, at 2. Dennis did not possess a valid driver's license, and DeGeorge believed that Dennis was currently driving the vehicle. DeGeorge followed the vehicle and initiated a traffic stop on the southbound ramp to

Highway 75.  The driver identified herself as Ashley Sterling, and Sterling admitted that she did not possess a valid driver's license.  DeGeorge spoke to Snyder, and Snyder directed DeGeorge to have the car towed with a "no touch" order pending a search of the vehicle pursuant to a search warrant. Sterling asked DeGeorge to retrieve her purse from the vehicle, and DeGeorge asked Sterling if he could search the purse for firearms. DeGeorge did not find a firearm in the purse, but he did find a white, rock-like substance that was later identified as crack cocaine. DeGeorge gave Sterling a Miranda[1] warning following the discovery of the crack cocaine.  Sterling confirmed that she understood her rights, and she agreed to speak to DeGeorge.  Sterling denied that she knew about the crack cocaine found in her purse, and she stated that Phillips had picked her up in the vehicle prior to the traffic stop.  Id.

Sterling was taken to the TPD Detective Division for an interview.  Sterling admitted that there was crack cocaine in her purse, and she stated that she had been living at a motel in west Tulsa with her cousin rather than at her apartment.  Dkt. # 31-1, at 6.  Phillips would occasionally visit her at her apartment, and she referred to Phillips as a "brother," even though they are not related.  Id. Sterling consented to a search of the motel room and her apartment.  The motel room was registered to Phillips, and Lavonta Dennis was found inside the motel room.  Motel staff advised the police that Phillips represented that Dennis was his wife, and Dennis consented to a search of the motel room. Police officers observed approximately $4,000 to $5,000 in $100 bills in Dennis' purse  Based on the evidence gathered so far, FBI Special Agent Bennett Forrest applied for a federal search warrant of the vehicle involved in the August 11, 2021 traffic stop. Dkt. # 31-1.  A federal magistrate judge

---

[1]    Miranda v. Arizona, 384 U.S. 436 (1966).

signed a warrant for a search of the vehicle, and law enforcement officers found a loaded firearm between the driver's seat and the center console.

Phillips was initially arrested on a warrant issued pursued to a complaint charging him possession of a controlled substance with intent to distribute based on the April 18, 2021 incident, and he made his initial appearance on August 12, 2021. Dkt. # 5. The magistrate judge found that Phillips was unable to afford counsel and John Campbell was appointed to represent Phillips. On August 17, 2021, a federal grand jury returned an indictment charging Phillips with possession of cocaine base with intent to distribute. A grand jury returned a superseding indictment (Dkt. # 17) charging Phillips with possession of cocaine base with intent to distribute (count one) and being a felon in possession of a firearm and ammunition (count two).

## II.

Defendant asks the Court to suppress all evidence seized during the April 18 and August 11, 2021 vehicle searches. As to the April 18, 2021 search, defendant argues that police had no basis to initiate a traffic stop of his vehicle, and police lacked probable cause to search his vehicle for drugs and alcohol. Dkt. # 24. He also argues that the inventory search and impoundment of his vehicle was pretext for an improper search for evidence of a crime. Defendant also challenges the stop and subsequent search of a vehicle on August 11, 2021, and he argues that there is no evidence that he possessed the firearm found in the vehicle. Plaintiff responds that police officers had reasonable suspicion to initiate a traffic stop of defendant's vehicle on April 18, 2021, and the search of the vehicle was a permissible probable cause and inventory search. Dkt. # 30. As to the August 11, 2021 search, plaintiff argues that defendant lacks standing to challenge the traffic stop, and the subsequent search was carried out pursuant to a valid search warrant. Dkt. # 31.

**April 18, 2021 Traffic Stop**

Defendant argues that Snyder's reason for initiating a traffic stop of defendant's vehicle is not credible, and he claims that police lacked probable cause to search his vehicle for drugs and alcohol.  Dkt. # 24, at 3-5.  He also argues the inventory search was pretextual for a search for evidence of a crime.  Id. at 6-7.  Plaintiff responds that Snyder observed multiple traffic violations and had reasonable suspicion to initiate a traffic stop, and police were justified in performing probable cause and inventory searches of defendant's vehicle.  Dkt. # 30, at 5-10.

The Court must initially consider whether police officers had a valid basis to initiate a traffic stop of defendant's vehicle and whether the length of the stop was reasonable.  A traffic stop is treated as an investigative detention, and such a stop is governed by the standards set forth in Terry v. Ohio, 392 U.S. 1 (1968).  United States v. Bradford, 423 F.3d 1149, 1156 (10th Cir. 2005).  In determining the reasonableness of a traffic stop, a court must make two separate inquiries.  The first is whether the police officer had a valid reason for initiating the traffic stop.  United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995).  "[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has a reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring."  Id.  Second, a traffic stop must not become an unnecessarily lengthy detention, but must be limited in scope to the purpose of the initial traffic stop.  United States v. Rice, 483 F.3d 1079,1083 (10th Cir. 2007).  A police officer may extend the length of the traffic stop for questioning beyond the initial purpose of the traffic stop only if the officer has "an objectively reasonable and articulable suspicion that illegal activity has occurred, or the driver voluntarily consents to further questioning."  United States v. Ramirez, 479 F.3d 1229, 1243 (10th Cir. 2007).

The Court must also consider whether the length of the traffic stop was reasonable under the second prong of Terry. An officer conducting a traffic stop may request a driver's license, vehicle registration, run a computer check, and issue a citation. See United States v. Zubia-Melendez, 263 F.3d 1155, 1161 (10th Cir. 2001). An officer may also "ask questions about the motorist's travel plans and authority to operate the vehicle," in addition to obtaining the relevant documentation, without exceeding the scope of an investigative detention. United States v. Alcaraz-Arellano, 441 F.3d 1252, 1258 (10th Cir. 2006). Such questioning does not violate the Fourth Amendment as long as the questioning does not prolong the traffic stop. United States v. Villa, 589 F.3d 1334, 1339 (10th Cir. 2009); United States v. Wallace, 429 F.3d 969, 974 (10th Cir. 2005). Police must have reasonable suspicion that criminal activity is afoot to continue a traffic stop beyond the purpose of issuing a warning or citation for the traffic violation. United States v. Kopp, 45 F.3d 1450, 1453 (10th Cir. 1995). Reasonable suspicion is a "particularized and objective basis for suspecting the person stopped of criminal activity." Ornelas v. United States, 517 U.S. 690, 696 (1996) (internal quotation marks omitted). An "inchoate and unparticularized suspicion or 'hunch' is insufficient" to support reasonable suspicion. United States v. Hall, 978 F.2d 616, 620 (10th Cir. 1992) (internal quotations and citations omitted). Reasonable suspicion "represents a minimum level of objective justification which is considerably less than proof of wrongdoing by a preponderance of the evidence." Alcaraz-Arellano, 441 F.3d at 1260 (quoting United States v. Mendez, 118 F.3d 1426, 1431 (10th Cir. 1997)). In determining whether an officer had reasonable suspicion of criminal activity, the Court does not evaluate the facts in isolation but instead construes them together based on the totality of the circumstances. United States v. Arivizu, 534 U.S. 266, 274 (2002).

Snyder testified that he was driving westbound on East Apache Street when he saw defendant driving in the opposite direction, and defendant was not wearing a seat belt and was operating his vehicle in a reckless manner. Snyder had also had prior interactions with defendant, and Snyder had previously cited defendant for driving with a suspended license. Snyder believed that defendant did not have a valid driver's license on April 18, 2021. Based on Snyder's observations and prior knowledge of defendant, he initiated a traffic stop of defendant's vehicle for the offenses of driving without wearing a seatbelt, speeding, and driving without a valid driver's license. The Court finds that Snyder's testimony concerning the basis for the traffic stop is credible, and Snyder had reasonable suspicion to believe that defendant had committed a traffic violation. The evidence also shows that the traffic was reasonable in length. At the suppression hearing, defendant showed Snyder and Mortensen's body camera footage from the traffic stop lasted no longer than five minutes before defendant was placed under arrest. Defendant's arrest effectively ended the traffic stop and police officers conducted a search of defendant's vehicle after he was taken into custody. A traffic stop of five minutes or less in length is reasonable, and defendant has not shown that traffic stop was invalid under the Fourth Amendment.

Defendant argues that police lacked probable cause to search his vehicle for drugs and alcohol, and he claims that the inventory search was pretextual for a search for evidence of a crime. Snyder and Mortensen both testified that they detected odors of alcohol and marijuana coming from the vehicle. Police are permitted to conduct a warrantless search of a vehicle if they have probable cause to believe "that the vehicle contains evidence of criminal activity," and they may search "any area of the vehicle in which the evidence might be found." Arizona v. Gant, 556 U.S. 332, 347 (2009). Probable cause is established if "under the totality of the circumstances, there is a fair

8

probability that the car contains contraband or evidence." United States v. Saulsberry, 878 F.3d 946, 951 (10th Cir. 2017). Defendant argues that there is no evidence suggesting that Snyder and Mortensen communicated with each other about their alleged detection of alcohol and marijuana in the vehicle. However, the Court finds that Snyder's and Mortensen's testimony is credible, and the odor of marijuana and alcohol coming from the vehicle provided a sufficient basis for a probable cause search of defendant's vehicle. The fact that they did not expressly discuss their independent belief that drugs and alcohol were likely present in defendant's vehicle does not detract from their credibility. Mortensen testified that they had been working together for some time and had conducted numerous traffic stops, and they did not have to specifically discuss the need for a probable cause search when the odor of drugs and alcohol was obvious. The evidence establishes that police had probable cause to conduct a search of defendant's vehicle for drugs and alcohol.

Even though the Court has found that the search was a valid probable cause search, the Court will also consider defendant's argument that the search was an improper inventory search. "[I]nventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment." Colorado v. Bertine, 479 U.S. 367, 371 (1987); United States v. Haro-Salcedo, 107 F.3d 769, 772 (10th Cir. 1997). An inventory search is valid where it is (1) "conducted according to standardized procedures," and (2) not "investigatory in nature but must instead be used only as a tool to record the defendant's belongings." United States v. Edwards, 242 F.3d 928, 938 (10th Cir. 2001); Haro-Salcedo, 107 F.3d at 772. "An inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence, but rather an administrative procedure designed to produce an inventory." Haro-Salcedo, 107 F.3d at 772-73. In a recent decision, the Tenth Circuit explained that the Fourth Amendment "imposes 'heightened requirements of police

who seize vehicles from private property," and impoundment of a vehicle from private property is permitted only when "(1) the car is blocking traffic, (2), the car is posing an imminent threat to public safety, or (3) the impoundment is justified by a standardized policy and a reasonable, non-pretextual rationale of community caretaking." United States v. Woodard, 5 F.4th 1148, 1152 (10th Cir. 2021).

In Woodard, the Tenth Circuit examined TPD's impoundment policy, and found that the policy permits impoundment of a vehicle when a traffic offense occurred on a public road but the traffic stop occurs on private property. Id. Unlike in Woodard, the traffic violations observed by Snyder occurred on a public road and defendant pulled his vehicle onto private property. Defendant also parked his vehicle in a manner that was partially blocking the driveway of a private business. TPD policy permitted impoundment of defendant's vehicle under the circumstances, but the Court must also consider the five factors stated in United States v. Sanders, 796 F.3d 1241 (10th Cir. 2015), to determine if the inventory search was pretextual. The five Sanders factors are:

> (1) whether the vehicle is on public or private property; (2) if on private property, whether the property owner has been consulted; (3) whether an alternative to impoundment exists (especially another person capable of driving the vehicle); (4) whether the vehicle is implicated in a crime; and (5) whether the vehicle's owner and/or driver have consented to the impoundment.

Sanders, 796 F.3d at 1250. The vehicle was parked on private property and the vehicle was partially blocking a driveway, and the owner of the private property asked police to have the vehicle removed. Snyder testified that defendant asked if an unidentified female could drive the vehicle away from the scene of the traffic stop, but Snyder denied the request because the vehicle likely contained evidence of a crime. Defendant also argues that he was not the owner of the vehicle, and the owner could have been contacted to remove the vehicle. However, police had a reasonable basis to believe that

the vehicle contained evidence of a criminal offense and that vehicle was implicated in a crime. Neither defendant nor the vehicle's owner consented to impoundment of the vehicle. Considering all of the Sanders factors, the Court finds that the inventory search was not pretextual for a general search for evidence of a crime. The Court gives significant weight to the factors that the owner of private property wanted the vehicle moved quickly and that the vehicle likely contained evidence of criminal activity. Defendant suggests that someone else could have driven the vehicle away, but he has failed to present any evidence identifying this person. He has also presented no evidence that the owner of the vehicle would have been willing to come and claim the vehicle. The Court finds that the inventory search of defendant's vehicle was permissible under the Fourth Amendment, and defendant's motion (Dkt. # 24) to suppress evidence from the April 11, 2021 search is denied.

**August 11, 2021 Traffic Stop**

Plaintiff argues that defendant was not present in the vehicle at the time of the traffic stop on August 11, 2021, and he lacks standing under the Fourth Amendment to challenge the stop. Dkt. # 31, at 4. Plaintiff also argues that defendant has the burden to establish that he has standing to challenge the search of the vehicle and, even if the does, the search was performed pursuant to a valid search warrant. Defendant states that he was driving the vehicle with permission from the owner, and he asserts that he has standing to challenge the traffic stop and search. Dkt. # 25, at 3. The Court has reviewed defendant's motion to suppress (Dkt. # 25) and has considered the record from the suppression hearing, and defendant has not challenged the validity of the search warrant for the vehicle search carried out following the August 11, 2021 traffic stop.

In order to proceed with a Fourth Amendment challenge, the moving party must have a sufficiently personal interest in the place or property, and a party may not challenge an allegedly

illegal search or seizure of a third party's property.  United States v. Davis, 750 F.3d 1186, 1190 (10th Cir. 2014); United Stated v. DeLuca, 269 F.3d 1128, 1131 (10th Cir. 2001).  A party must have a reasonable expectation of privacy in the place or property being searched in order to proceed with a Fourth Amendment challenge.  United States v. Chavez, 985 F.3d 1234, 1240 (10th Cir. 2021).  To determine whether a defendant has a reasonable expectation of privacy, a court must consider whether "the defendant manifested a subjective expectation of privacy in the area searched and whether society is prepared to recognize that expectation as objectively reasonable." United States v. Erwin, 875 F.3d 268, 270 (10th Cir. 1989).  A person seeking to suppress evidence found as a result of a vehicle search must show that he had a "possessory or property interest in the vehicle searched." United States v. Mosely, 743 F.3d 1317, 1322 (10th Cir. 2014).

Defendant claims that he was driving the vehicle with the permission of the owner before he was arrested by Snyder, and he asserts that this gives him standing to challenge the traffic stop and search. Dkt. # 25, at 3.  He cites two cases in which a person who borrowed a vehicle was found to have standing to contest the search of a vehicle.  However, defendant fails to mention that person found to have a reasonable expectation of privacy in those cases was actually present in the vehicle when the traffic stop and search occurred.  See United States v. Garcia, 897 F.2d 1413 (7th Cir. 1990); United States v. Miller, 821 F.2d 546 (11th Cir. 1987).  Defendant has cited no authority that a non-owner of a vehicle who was not present during a traffic stop has a reasonable expectation of privacy.  The evidence is clear that defendant was arrested and taken into custody before Sterling drove away from the QuikTrip store in the vehicle, and she was the sole occupant of the vehicle at the time of the traffic stop.  The traffic stop cannot reasonably be viewed as a seizure of the

defendant and his Fourth Amendment rights were not implicated by the traffic stop, and he has no standing under the Fourth Amendment to challenge the traffic stop.

Plaintiff acknowledges that defendant could have standing to challenge the search of the vehicle if he can show that he had a "legitimate possessory interest in or lawful control over the car." Dkt. # 31, at 5 n.1 (quoting United States v. Valdez-Hocker, 333 F.3d 1206, 1209 (10th Cir. 2003)). To resolve this type of standing issue, the Court should consider "(1) whether the defendant asserted ownership over the items seized from the vehicle; (2) whether the defendant testified to his expectation of privacy at the suppression hearing; and (3) whether the defendant presented any testimony at the suppression hearing that he had a legitimate possessory interest in the vehicle." Valdez-Hocker, 333 F.3d at 1209.  As to the first factor, defendant disclaims ownership of the firearm that was found during a search of the vehicle, and he has not attempted to assert ownership of any other items found in the vehicle.  Defendant did not testify at the suppression hearing and the second factor is not relevant in this case.  For the third factor, the Court will consider all of the testimony offered at the suppression and any other available evidence to determine if defendant has asserted a possessory interest over the vehicle.  Defendant's entire argument that he has standing to contest the search of the vehicle is a statement in his motion to suppress that he "was driving the vehicle with permission from the owner . . . ." Dkt. # 25, at 3.  However, he has offered no evidence in support of this assertion, even though the Court held an evidentiary hearing on defendant's motion to suppress as he requested.  The Court finds that defendant has offered no evidence that he had a possessory interest in or ownership of the vehicle, and he lacks standing to challenge the search of the vehicle.  Even if defendant had standing, he has not challenged the validity of the search warrant that was obtained by police to search the vehicle, and the Court finds no basis to suppress the

13

evidence, specifically the firearm, that was found during the vehicle search.  Defendant's motion to suppress (Dkt. # 25) is denied for lack of standing and defendant's failure to establish that the search constituted a violation of the Fourth Amendment.

## III.

Defendant argues that count two of the indictment should be dismissed for lack of evidentiary support.  Dkt. # 29.  He has also filed three motions in limine (Dkt. ## 26, 27, 28) challenging the admissibility of evidence at trial.  Plaintiff has filed notice that it will seek to admit evidence at trial that may fall under Fed. R. Evid. 404(b), and defendant has filed an objection to the Rule 404(b) notice.  Dkt. ## 41, 43.

**Motion to Dismiss (Dkt. # 29)**

Defendant asks the Court to dismiss count two of the indictment due to lack of evidentiary support, because he claims that his attorney has reviewed the discovery materials and plaintiff has not produced any evidence tending to show that defendant possessed the firearm referenced in the indictment.  Plaintiff responds that the allegations of count two of the indictment state an offense against defendant for violation of 18 U.S.C. § 922(g), and the defendant's motion to dismiss should be denied.

Under Fed. R. Crim. P. 7(c), an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ."  "An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." United States v. Todd, 446 F.3d 1062, 1067 (10th Cir. 2006) (quoting United States v. Dashney, 117 F.3d 1197, 1205 (10th Cir. 1997)).  An indictment may not be challenged based on the strength or

14

weakness of the government's case, but only on whether the allegations, if taken as true, support an indictment.  Id.  A very narrow exception to the rule against assessing the factual underpinnings of an indictment exists when undisputed facts establish that, "as a matter of law, the government is incapable of proving its case beyond a reasonable doubt."  Id. at 1068 (quoting United States v. Hall, 20 F.3d 1084, 1088 (10th Cir. 1994)).  "Dismissals under this exception are not made on account of a lack of evidence to support the government's case, but because undisputed evidence shows that, as a matter of law, the Defendant could not have committed the offense for which he was indicted." Todd, 446 F.3d at 1068.

The Court has reviewed the indictment and count two plainly states an offense against defendant for being a felon illegally in possession of a firearm.  The indictment states that defendant has six prior felony convictions, that knew he had been convicted of a felony, that defendant possessed a firearm and ammunition, and that defendant's possession of the firearms and ammunition affected interstate commerce. Dkt. # 17, at 2.  Defendant claims that his attorney has reviewed the discovery materials, and his attorney has found no evidence suggesting that defendant possessed a firearm or ammunition on August 11, 2021.  Dkt. # 29, at 1-2.  This is not a basis to dismiss a criminal charge against a defendant, and defendant must exercise his right to a jury trial if he intends to challenge the weight or validity of the evidence against him.  Defendant's motion (Dkt. # 29) to dismiss count two of the indictment is denied.

**Rule 404(b) Evidence**

Plaintiff has filed notice (Dkt. # 41) that it intends to offer evidence at trial that may fall under Rule 404(b).  The evidence includes body camera footage from the April 18, 2021 traffic stop and evidence related to four prior incidents in which defendant interacted with the TPD during traffic

stops or searches. Defendant objects to the admissibility of the body camera footage on the basis that the April 18, 2021 traffic and subsequent search violated his Fourth Amendment rights, and he argues that the remaining evidence would be inadmissible under Rule 404(b). Dkt. # 43.

> Rule 404(b) provides, in pertinent part:
>
> Evidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> . . .
>
> This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

However, Rule 404(b) does not apply to "other act" evidence which is admitted as proof of the charged conduct; it applies only to evidence of acts extrinsic to the charged crime. United States v. Irving, 665 F.3d 1184, 1212 (10th Cir. 2011). The Tenth Circuit has held that "intrinsic evidence is that which is directly connected to the factual circumstances of the crime and provides contextual or background information to the jury." Irving, 665 F.3d at 1212. Moreover, "'[a]n uncharged act [is not] extrinsic if it was part of the scheme for which a defendant is being prosecuted . . . .'" United States v. DeLuna, 10 F.3d 1529, 1532 (10th Cir. 1993) (quoting United States v. Record, 873 F.2d 1363, 1372 n.5 (10th Cir. 1989)).

The potential Rule 404(b) evidence falls into two broad categories. First, plaintiffs will seek to introduce body camera footage from the officers who conducted the traffic stop and search on April 18, 2021. Second, plaintiff seeks to introduce evidence of defendant's prior interactions with police officers, including traffic stops and the execution of search warrants where drugs or firearms were recovered. As to the first category, evidence of body camera footage of the April 18, 2021

16

traffic stop and vehicle search is clearly intrinsic to the charged offenses, and Rule 404(b) is not implicated by this evidence.  The Court has rejected defendant's argument that the traffic stop and search were conducted in violation of his Fourth Amendment rights, and the body camera footage will be admissible at trial.  As to the second category, the Court finds that evidence of defendant's prior interactions with police falls under Rule 404(b) and plaintiff has not identified a proper basis in the Rule 404(b) notice to admit this evidence at trial.  The Court declines to offer a conclusive ruling as to this category of evidence, but plaintiff must first make a proffer outside the presence of the jury establishing that evidence of defendant's prior interactions with police is admissible.  Defendant is advised that he could open the door to admissibility of this evidence if he testifies or his attorney makes any argument suggesting that he had no prior interaction with the police.

**Motions in Limine (Dkt. ## 26, 27, 28)**

Defendant has filed three motions in limine to exclude evidence at trial.  Defendant asks the Court to exclude evidence of his prior criminal convictions, any alleged prior bad acts, and his "alleged dangerous character."  Dkt. # 26.  He also seeks to exclude evidence that defendant had a prior gang affiliation, and he also asks the Court to prohibit any testimony that drug dealers typically carry firearms.  Dkt. ## 27, 28.  Plaintiff responds that it will not offer testimony or evidence that defendant has a "dangerous character," but it will be required to offer evidence of defendant's prior convictions unless he makes appropriate stipulations.  Dkt. # 32.  Plaintiff will not solicit testimony or offer evidence that defendant has prior gang affiliation unless he opens the door to this kind of evidence.  Dkt. # 33.  Plaintiff will also not seek to offer expert testimony that drug dealers typically carry firearms, but it would not be improper for a fact witness who is a police officer to make this connection based on their experience.  Dkt. # 34.

Under Fed. R. Evid. 401, evidence is relevant "if it has any tendency to make a fact more or less probable than it would be without the evidence" and the "fact is of consequence in determining the action." However, a court may exclude relevant evidence if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Unfair prejudice means that evidence has an "undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." United States v. Silva, 889 F.3d 704, 712 (10th Cir. 2018).

The Court finds that defendant's motions in limine (Dkt. ## 26, 27, 28) are moot based on plaintiff's representations that the evidence referenced by defendant will likely not be offered at trial. As to evidence of defendant's prior convictions, defendant is advised the plaintiff will be required to offer evidence of his convictions unless he makes appropriate stipulations that he had a prior felony conviction and that he was aware of this fact on August 11, 2021. See Rehaif v. United States, 139 S. Ct. 2191 (2019); Old Chief v. United States, 519 U.S. 172 (1997). Plaintiff has stated that it will not offer evidence that defendant generally has a "dangerous character" or that defendant was previously affiliated with a gang unless defendant opens the door to this kind of evidence. The parties' filings do not permit a more detailed discussion concerning the admissibility of the types of evidence referenced in defendant's motions in limine, and defense counsel is advised that he will need to make objections at trial to have evidence excluded or to preserve any objections for appeal.

**IT IS THEREFORE ORDERED** that defendant's motions to suppress evidence (Dkt. ## 24, 25) and defendant's motions to dismiss count two of the indictment (Dkt. # 29) are **denied**.

**IT IS FURTHER ORDERED** that defendant's Motion in Limine to Exclude Evidence Related to Phillips' Criminal Record and Alleged Dangerous Character (Dkt. # 26), defendant's Motion in Limine Regarding References to Alleged Gang Affiliation (Dkt. # 27), and defendant's Motion in Limine to Limit Testimony that Drug Dealers Typically Possess Firearms (Dkt. # 28) are **moot**.

**DATED** this 13th day of January, 2022.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE